UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                          :
JILL B. SAVEDOFF, Individually and on     :
behalf of all others similarly situated,  :      CASE NO. 1:06-CV-135
                                          :
                    Plaintiff,            :      JUDGE JAMES S. GWIN
                                          :
vs.                                       :      ORDER
                                          :      [Resolving Doc. Nos. 93, 102]
ACCESS GROUP, INC. *et al.*,              :
                                          :
                    Defendants.           :
                                          :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On November 9, 2006, Plaintiff Jill B. Savedoff ("Savedoff") filed a second amended class

action on behalf of herself and the class alleging multiple breaches of contract. [Doc. 99.] The Class,

a class that the Court has certified, is defined as:

> All persons who are borrowers under an EZ Pay Plan on whose Student Loans any
> of the Defendants have, since January 1,1993, compounded accrued interest after
> commencement of the repayment period. Excluded from the Class are those
> borrowers whose accrued interest has been compounded solely pursuant to a written
> forbearance agreement with the lender.

[Doc. 98.] On December 27, 2006, Defendant Access Group, Inc. ("Access Group") renewed their

previously filed motion for summary judgment. [Doc. 101.] The Plaintiff opposes this motion and

files a cross-motion for partial summary judgment. [Doc. 102.] For the following reasons, the Court

**DENIES** the Defendant's motion and **GRANTS** the Plaintiff's motion.

## I.  INTRODUCTION

Case No. 1:06-cv-135
Gwin, J.

Plaintiff and the other members of the class each contracted with Defendant Access Group for educational loans ("student loans"). [Doc. 99.]  During the course of the Plaintiff's repayment period, interest accrued that the Defendant did not include in borrowers' monthly payments ("Additional Interest"). [Docs. 93, 102.]  Specifically, the Defendant permissibly increased borrowers' interest rates during the repayment period but failed to provide for a corresponding increase in those individuals' monthly payment obligations.  *Id.*  As a result, borrowers accrued Additional Interest on their respective loans.  *Id.*

Prior to October 2004 the Defendant capitalized this Additional Interest, but has since discontinued that practice and voluntarily "uncapitalized" the accounts of the Plaintiff and the majority of all other potential class members by crediting back to those borrowers all interest on interest payments.  *Id.*  From October 2004 forward, the Defendant has applied borrowers' monthly payments, in order, to accrued interest, additional interest, and then to reduce the principal.  *Id.*

With this suit, Plaintiff Savedoff says that the Defendant breached the terms of the class members' student loan contracts by compounding the unpaid accrued interest after the repayment period started. [Doc. 99.]  Additionally, the Plaintiff says that the Defendant has further breached the student loan contracts' terms by impermissibly applying borrowers' monthly payments to pay off Additional Interest before they apply any amount to reduce the principal.  *Id.*  The parties' dispute centers primarily on the contractual terms contained within the promissory note executed by the Plaintiff and other members of the class.  The relevant portions of the note, in Paragraph E, provide:

1.  Interim Period – During the Interim Period you will send me quarterly statements showing my loan disbursements and the interest that accrues on my loan . . . The quarterly statements will cover periods beginning on the

Case No. 1:06-cv-135
Gwin, J.

initial Disbursement Date and thereafter on the first day of each January,
April, July, and October.  I may, but am not required to, make payments of
interest or principal during the Interim Period.  You may add any interest that
I do not pay during the Interim Period to the principal balance, as defined in
Paragraph D.3.

2.      Repayment Period – During the Repayment Period you will send me periodic
statements on my loan.  The periodic statements will cover periods beginning
on the first day of the Repayment Period and on the same day of each
following month.  I will make consecutive monthly payments in the amounts
and on the payment due dates shown on my periodic statements until I have
paid all of the principal and interest and any other charges I may owe under
this Promissory Note.

3.      Repayment Terms – The amounts shown on my periodic statements will be
consecutive monthly installments of the principal and interest calculated each
Change Date to equal the amount necessary to amortize the unpaid principal
balance (including any capitalized interest) of my loan (as of the date of
calculation) in equal monthly installments of principal and interest at the
Variable Rate then in effect over the number of months remaining in the
Repayment Period.

4.      Amounts Owing at the End of the Repayment Period – Since interest accrues
daily upon the unpaid principal balance of my loan, if I make payments after
my payment due dates, I may owe additional interest.  If I have not paid my
late charges, I will also owe additional amounts for those late charges.  In
such case you will increase the amount of my last monthly payment to the
amount necessary to repay my loan in full.

5.      Minimum repayment – Notwithstanding Paragraph E.3, I agree to pay at least
$50 each month (principal and interest) or the unpaid balance, whichever is
less.

[Doc. 103, Exhibit D.]

## II. LEGAL STANDARD

Summary judgment is appropriate where the evidence submitted shows "that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law."  Fed. R. Civ. P. 56(c).  The moving party has the initial burden of showing the absence of

Case No. 1:06-cv-135
Gwin, J.

a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *Id.* Nor can the nonmoving party "rest upon the mere allegations or denials of the adverse party's pleading." Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *National Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). "The disputed issue does not have to be resolved conclusively in favor of the nonmoving party, but that party is required to present significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)); *see also Celotex*, 477 U.S. at 322. Ultimately the Court must

-4-

Case No. 1:06-cv-135
Gwin, J.

decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

### III. ANALYSIS

In their dueling motions for summary judgment, both parties say that they are entitled to judgment as a matter of law. [Docs. 93, 102.]  Specifically, the Plaintiff says that she is entitled to partial summary judgment as to the issue of liability for each of her two breach of contract claims. [Doc. 102.]  The Defendant, in contrast, says that the Court should enter judgment in their favor as to both breach of contract claims, arguing that the Plaintiff's first claim is moot and her second claim fails as a matter of law. [Doc. 93.]  The Court considers each of the Plaintiff's claims in turn.

### A.    First Breach of Contract: Capitalization of Interest

With her motion for partial summary judgment, Plaintiff Savedoff first says that Defendant Access Group is liable for breach of contract based upon the Defendant's improper compounding of unpaid accrued interest during borrowers' repayment periods. [Doc. 102.]  As was briefly described above, the loan contracts provide for variable interest rates. [Doc. 103, Exhibit D.]  Here, the Defendant permissibly increased borrowers' interest rates during the repayment period without providing for a corresponding increase in those individuals' monthly payment obligations. [Docs. 93, 102.]  As such, the Plaintiff and other members of the class accrued additional interest on their student loans, which the Defendant then added to their principal balance. *Id.*  Plaintiffs basically say that the notes required Defendant afford them the option of paying the higher interest charges rather than having those interest charges rolled over to the principal balance.

Case No. 1:06-cv-135
Gwin, J.

The Defendant does not contest the substance of Plaintiffs' claims, but argues that the issue is moot because they have discontinued the allegedly improper practice and undone any damage that may have resulted to existing class members through their prior actions. [Docs. 93, 103.] Accordingly, Defendant Access Group says that it is entitled to judgment as a matter of law with respect to the Plaintiff's claim because "[g]enerally, a case is moot if the defendant has taken any action demanded by or paid any damages sought by the plaintiff." [Doc. 93.]  The Court disagrees.

"Under Article III of the Constitution, [a federal court's] jurisdiction extends only to actual cases and controversies. [A federal court has] no power to adjudicate disputes which are moot." *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc) (quotation omitted).  Here, the Defendant argues that no actual case and controversy exists because of its voluntary decision to comply with the Plaintiffs demands. [Doc. 93.]  However, such an argument ignores the well established principle that "a case may be mooted by a defendant's voluntary conduct only 'if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur . . . '" *Ammex, Inc. v. Cox*, 351 F.3d 697, 705 (6th Cir. 2003) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000)).

Indeed, for a Defendant's voluntary actions to moot a case, it is necessary for the Defendant to establish that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).  In this case, the Defendant has not met this substantial burden.  In fact, the Defendant's own statements suggest the exact opposite.

First, in its opposition to the Plaintiff's motion for partial summary judgment the Defendant

-6-

Case No. 1:06-cv-135
Gwin, J.

admits that to date they have not completed crediting all class members' accounts. [Doc. 103.] This alone is sufficient to refute the Defendant's mootness argument, as members of the class are indisputably still entitled to collect outstanding monetary damages. Second, although the Defendant does not substantively challenge whether its compounding of borrowers additional interest was contractually impermissible, it repeatedly states in its submissions to the Court that it does not believe its conduct was problematic. [Doc. 93, Attachment #1.] Based upon these facts, the Court finds that there is some danger – especially in light of the length of the loans at issue in this case – that the Defendant may revert back to its previous practice of compounding interest at some point in the future. Accordingly, the Court rejects the Defendant's argument that this issue is moot and finds in favor of the Plaintiff as to the issue of liability. Although finding for the Plaintiffs on this claim, the Court anticipates the amount of damages, especially the amount of damages per client, will be low even for those Plaintiffs entitled to damages.

**B.      Second Breach of Contract: Application of Borrowers' Monthly Payments**

Plaintiff Savedoff says that Defendant Access Group is also liable for breach of contract as a matter of law based upon the Defendant's application of borrowers' monthly payments to Additional Interest before applying any amount to reduce loan principal. [Doc. 102.] Specifically, the Plaintiff says that no contractual basis exists for the Defendant's application of borrower payments to either additional interest or accrued late fees prior to each payment being applied to amortize each borrower's unpaid principal balance. *Id.* As such, the Plaintiff argues that under the unambiguous terms of their loan agreements with the Defendant class members are not obligated to pay off any Additional Interest they may accumulate till their last monthly payment, at which time

-7-

Case No. 1:06-cv-135
Gwin, J.

such interest will be due in the form of a balloon payment. *Id.*

The Defendant admits that the Promissory Notes at issue do not explicitly prescribe an order of payment application. [Docs. 93, 103.]  However, Access Group rejects the Plaintiff's contention that such contractual silence precludes them from applying borrower payments to pay off additional interest prior to reducing loan principal. *Id.*  Specifically, the Defendant says that (1) loan documents implicitly empower them to charge borrowers for accrued debts like Additional Interest at their discretion and (2) they are therefore free to utilize borrowers' monthly payments to satisfy such obligations. [Doc. 103.] Additionally, in its own motion for summary judgment the Defendant argues that the Plaintiff's "balloon payment" argument must fail because it is absurd on its face. [Doc. 93.]  Ultimately, the Court agrees with the Plaintiff.

In reaching this decision, the first issue the Court must address is whether the student loan contracts are ambiguous regarding whether the Defendant may apply borrowers' monthly payments to reduce accrued Additional Interest. "The question of whether the language of a written agreement is ambiguous is one of law." *Parrett v. American Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir.1993)(Ohio law); *Ohio Historical Soc'y v. General Maintenance & Eng'g Co.*, 583 N.E.2d 340, 344 (1989). "If a contract is clear and unambiguous . . . there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio*, 474 N.E.2d 271, 272-73 (Ohio 1984)(per curiam). "However, the interpretation of such language, once held to be ambiguous, is a factual issue turning on the intent of the parties." *Parrett*, 990 F.2d at 858; *Ohio Historical Soc'y*, 583 N.E.2d at 344.  A court may nonetheless "take cognizance of extrinsic evidence in order to determine whether a factfinder need consider parol evidence in construing the contract." *Lincoln Elec. Co. v. St. Paul Fire and Marine Ins. Co.,* 210 F.3d 672, 684 (6th Cir. 2000) (Ohio law).

-8-

Case No. 1:06-cv-135
Gwin, J.

Here, both parties deny that any ambiguity exists with respect to the terms of the student loan contracts at issue and argue that the Court should accept their respective interpretation as a matter of law. [Docs. 93, 102.] Accordingly, both parties have moved for summary judgment as to the issue of liability. *Id.* Ultimately, the Court agrees that the disputed contract terms are not ambiguous and finds in favor of the Plaintiffs.

Consistent with the terms of the class members' student loan contracts, Defendant Access Group provides periodic statements to each borrower that indicate "the amount necessary to amortize the unpaid principal balance in monthly installments of principal and interest . . . " [Doc. 102, Attachments E and F.] Each borrower is then obligated to pay the amount provided on the statement. *Id.* The loan documents do not, however, explicitly contemplate Additional Interest of the sort at issue in this case, which accrued as a result of the Defendant's decision not to increase borrowers' monthly payments so as to keep pace with rising variable interest rates.

Despite this textual silence, Defendant Access Group first argues that the loan documents are not ambiguous and that they implicitly authorize the Defendant to include payment obligations such as Additional Interest as part of borrowers' monthly payments. [Docs. 93, 103.] Specifically, the Defendant says that such monthly payments "are intended to cover all interest, plus 'other charges,' not merely the scheduled interest and principal." [Doc. 103.]  In support of this proposition, the Defendant cites  ¶ E.2 of the Promissory Note, which reads in relevant part:

> 2. Repayment Period -- During the Repayment Period you will send me periodic statements on my loan . . . *I will make consecutive monthly payments in the amounts and on the payment due dates shown on my periodic statements until I have paid all of the principal and interest and any other charges I may owe on my loan, as described in this Statement of Loan Terms and Conditions.*

-9-

Case No. 1:06-cv-135
Gwin, J.

[Doc. 102, Exhibit F.] [Emphasis Added]

The Court agrees with the Defendant that the language cited above clearly obligates borrowers to pay off their entire loan obligation by their final monthly payment. The court disagrees, however, that the cited language affirmatively allows the Defendant to include Additional Interest or "any other charges" as part of a borrower's monthly payments throughout the course of repayment. To the contrary, the loan documents explicitly contemplate borrowers' paying particular "other charges," such as unpaid late fees and any interest accrued as a result of such late fees, in the form of an increased final loan payment. [Doc. 102, Exhibit F, ¶ E.4.] Accordingly, the Court finds that the text of the loan contracts at issue here are silent regarding whether the Defendant may utilize borrowers' monthly payments to pay off Additional Interest.

Alternatively, even if the Court finds that the relevant contracts are facially susceptible to multiple meanings, the Defendant argues that they are nonetheless not ambiguous because crediting the Plaintiff's interpretation of the contracts is not plausible and therefore does not qualify as a "reasonable" interpretation. [Docs. 93, 103.] Under Ohio law, a term is only ambiguous if it is "reasonably susceptible of more than one meaning," *Weiss v. St. Paul Fire and Marine Ins. Co.*, 283 F.3d 790, 796 (6th Cir. 2002) (citing *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (1988)). Specifically, Defendant Access Group says that the Plaintiff's proposed interpretation is unreasonable because no lender "would agree to defer payments for 20 years without any interest accruing on the deferred amounts . . . " [Doc. 93.] Indeed, the Defendant says that "such a critical feature would have been spelled out if the loan repayment process were intended to work this way." [Doc. 93.] Given that the Defendant drafted the contractual documents, however, the Court disagrees.

-10-

Case No. 1:06-cv-135
Gwin, J.

As a general rule, "ambiguous contractual language will be construed against the drafter of the contract." *Mead Corp. v. ABB Power Generation, Inc*., 319 F.3d 790, 798 (6th Cir. 2003).  Here, Defendant Access Group drafted all of the contractual provisions at issue in this case and presented them to the Plaintiffs to accept or reject, without any ability to amend specific terms.  Despite such complete control regarding the content of the contracts terms, the Defendant failed to include any specific language authorizing them to apply borrowers' monthly payments to payment obligations such as Additional Interest.

The Defendant's explanation for this omission, which they say is the only "reasonable" one, is that they must implicitly have the right to engage in the practice at issue because otherwise they would be severely economically disadvantaged. [Docs. 93, 103.]  The Court is apparently less incredulous than the Defendant that Access Group could commit such an error and rejects the premise of the Defendant's argument.  In fact, if the practice at issue is as important as the Defendant implies, logic dictates that Access Group would have expressly protected it in the terms of the contract that it unilaterally drafted; which the Defendant has expressly done with respect to its federal student loans since 2002. [Doc. 103, Gabe Declaration.]

The Plaintiff emphasizes the Defendant's explicit reservation of the right to apply monthly payments to Additional Interest in other contexts in arguing that the Court should not read such authority into the contracts at issue in this case. [Doc. 102.]  Specifically, the Plaintiff says that the Promissory Note fully articulates what obligations the Defendant may include as part of each monthly payment and argues that the document's failure to include Additional Interest within that category is representative of the parties' intent.  *Id.*  Accordingly, the Plaintiff argues that no ambiguity exists and that she and the class are entitled to partial judgment as a matter of law with

-11-

Case No. 1:06-cv-135
Gwin, J.

respect to the issue of liability. *Id.*

Ultimately, the Court suspects that the source of the Defendant's omission in this case was neither unshakeable faith in their implied authority to engage in the disputed practice nor the result of a conscious decision not to take such action. Rather, the current dispute is more likely the result of the Defendant completely failing to even consider the scenario that now presents itself. Here, that omission is particularly damaging because the Defendant unilaterally drafted the disputed contract in this case. Where a party so completely controls the drafting process, such that their counterpart is essentially presented with a choice of accepting or rejecting the terms presented to them, it is difficult for the drafting party to then claim that it possesses implied rights not spelled out in the contract. Accordingly, the Court agrees with the Plaintiff that the loan documents' text – which does not include any provision allowing the Defendant to apply borrowers monthly payments to reduce Additional Interest – is unambiguous and representative of the parties' intent. The Court therefore grants the Plaintiff's motion for partial summary judgment as to the issue of liability.

## IV.  CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendant's motion for summary judgment and **GRANTS** the Plaintiff's motion for partial summary judgment as to the issue of liability. The parties will proceed to trial to determine damages.

IT IS SO ORDERED.


Dated: February 26, 2007                s/      *James S. Gwin*
                                        JAMES S. GWIN
                                        UNITED STATES DISTRICT JUDGE


-12-