**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| Jill B. Savedoff, individually and on behalf of all others similarly situated, | : CASE № 1:06cv00135 |
| | : |
| | : CIVIL ACTION |
| Plaintiff, | : |
| | : |
| vs. | : JUDGE JAMES S. GWIN |
| | : |
| Access Group, Inc., | : |
| | : MAGISTRATE JUDGE LIMBERT |
| Defendants. | : |

**CLASS PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, FOR PAYMENT OF COSTS AND EXPENSES, AND FOR AN INCENTIVE AWARD TO CLASS REPRESENTATIVE**

DAVID H. WEINSTEIN
MINDEE J. REUBEN
WEINSTEIN KITCHENOFF & ASHER LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Tel: (215) 545-7200

JUSTIN F. MADDEN
LANDSKRONER GRIECO MADDEN, LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
Tel: (216) 522-9000

Attorneys for the Plaintiff, Jill B. Savedoff, and the Class

For the reasons set forth in the attached Memorandum of Law, Class Plaintiffs seek final approval of the Settlement, for payment of costs and expenses and for an incentive award to the Class Representative.  A proposed Order is attached as Exhibit B to the Memorandum of Law. Access concurs with the relief sought in Paragraphs 1-4 and 6 of the Order, and takes no position on Paragraph 5.  This motion and memorandum of law in support is Plaintiff's alone.


        Respectfully submitted,

Dated:  February 13, 2009         */s/ David H. Weinstein*
        DAVID H. WEINSTEIN
        MINDEE J. REUBEN
        WEINSTEIN KITCHENOFF & ASHER LLC
        1845 Walnut Street, Suite 1100
        Philadelphia, PA 19103
        weinstein@wka-law.com
        reuben@wka-law.com
        Tel: (215) 545-7200
        Fax: (215) 545-6535

        JUSTIN F. MADDEN
        LANDSKRONER GRIECO MADDEN, LLC
        1360 West 9th Street, Suite 200
        Cleveland, Ohio 44113
        justin@landskronerlaw.com
        Tel: (216) 522-9000
        Fax: (216) 522-9007

        Attorneys for Plaintiff,
        Jill B. Savedoff and the Class

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| Jill B. Savedoff, individually and on behalf of all others similarly situated, | :  CASE № 1:06cv00135 |
| | : |
| | :  CIVIL ACTION |
| Plaintiff, | : |
| | : |
| vs. | :  JUDGE JAMES S. GWIN |
| | : |
| Access Group, Inc., | : |
| | :  MAGISTRATE JUDGE LIMBERT |
| Defendants. | : |

## CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, FOR PAYMENT OF COSTS AND EXPENSES AND FOR AN INCENTIVE AWARD TO CLASS REPRESENTATIVE

DAVID H. WEINSTEIN
MINDEE J. REUBEN
WEINSTEIN KITCHENOFF & ASHER LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Tel: (215) 545-7200

JUSTIN MADDEN
LANDSKRONER GRIECO MADDEN, LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
Tel: (216) 522-9000

Attorneys for the Plaintiff, Jill B. Savedoff, and the Class

# TABLE OF CONTENTS

Table of Authorities … ii

I.       INTRODUCTION … 1

II.      STATEMENT OF FACTS … 1

      A.      Summary of Plaintiff's Allegations … 1

      B.      Procedural History of Litigation … 2

      C.      Settlement Negotiations … 3

      D.      Basic Terms of Settlement Agreement … 4

            1.      Settlement Fund … 4

            2.      Release … 5

      E.      Preliminary Approval of Settlement … 5

      F.      Notice Under the Class Action Fairness Act and to the Class … 6

III.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED … 6

      A.      Settlement of Class Actions Is Favored in the Law … 6

      B.      The Settlement Is Fair, Reasonable and Adequate … 7

            1.      Likelihood of Success on the Merits and Risks, Expense and Delay of Future Litigation … 9

            2.      Judgment of Counsel … 1

            3.      The Settlement is Based on Adequate Information, Discovery and Evidence … 12

            4.      The Settlement is Fair to Absent Class Members … 12

            5.      Only One Class Member Has Objected, and His Objection is Without Merit … 13

            6.      The Settlement Is the Product of Arm's-Length Negotiations … 14

7.      Settlement is in the Public Interest … 15

IV.     REIMBURSEMENT OF CLASS COUNSEL' COSTS AND
        PAYMENT OF A MODEST INCENTIVE AWARD TO THE
        CLASS REPRESENTATIVE IS APPROPRIATE … 16

        A.      Reimbursement of Costs and Expenses … 16

        B.      Incentive Award … 17

V.      CONCLUSION … 18

**TABLE OF AUTHORITIES**

*Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) … 6

*Ass's for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002) … 8, 12

*Berry v. School District of the City of Benton Harbor*, 184 F.R.D. 93 (W.D. Mich. 1998) … 6, 9, 13

*Bowling v. Pfizer, Inc.*, 143 F.R.D. 141 (S.D. Ohio 1992) … 15

*Carson v. Am. Brands*, 450 U.S. 79 (1981) … 7

*Clark Equip. Co. v. Int'l Union, Allied Indus. Workers*, 803 F.2d 878(6th Cir. 1986) … 6, 8

*Cohen v. Chilcott*, 522 F. Supp. 2d 105 (D. D.C. 2007) … 18

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) … 6, 11

*Depoister v. Mary M. Holloway Found.*, 36 F.3d 582 (7th Cir. 1994) … 8

*Detroit v. Grinnell Corp.*, 495 F.2d 488 (2d Cir. 1974) … 7

*Epstein v. Wittig*, 2005 U.S. Dist. LEXIS 31078 (D. Kan. 2005) … 12

*Frank v. Eastman Kodak*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) … 7, 13, 14

*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) … 15

*Heit v. VanOchten*, 126 F. Supp. 2d 487 (W.D. Mich. 2001) … 13

*Hughes v. Microsoft Corp.*, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. 2001) … 11

*In re Broadwing, Inc.*, 2006 U.S. Dist. LEXIS 72609 (S.D. Ohio 2006) … 7

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (S.D. Mich. 2003) … 13, 16

*In re Corrugated Container Antitrust Litig.*, 659 F. 2d 1322 (5th Cir. 1981) … 11

*In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075 (6th Cir. 1984) … 9, 12

*In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) … 16

*In re SmithKline Beecham Corp. Sec. Litig.*, 751 F. Supp. 525 (E.D. Pa. 1990) … 16

*In re Synthroid Marketing Litig.*, 264 F.3d 712 (7th Cir. 2001) … 17

*Int'l Union of Elec., Salaried, Mach. & Furniture Workers v. Unisys Corp.*, 858 F. Supp. 1243 (E.D.N.Y. 1994) … 11

*IUE-CWA v. General Motors*, 238 F.R.D. 583 (E.D. Mich. 2006) … 11

*Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290 (W.D. Pa. 1997) … 13

*Mich. Hosp. Ass'n v. Babcock*, 1991 U.S. Dist. LEXIS 2058 (W.D. Mi. 1991) … 7, 11, 13

*Reed v. Rhodes*, 869 F. Supp. 1274 (N.D. Ohio 1994) … 13

*Robinson v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 11673 (S.D. Ohio 2005) … 9, 13

*Shy v. Navistar Int'l Corp.*, 1993 U.S. Dist. LEXIS 21291 (S.D. Ohio 1993) … 8

*Smith v. Krispy Kreme Doughnut Corp.*, 2007 U.S. Dist. LEXIS 2392 (M.D.N.C. 2007) … 18

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559 (6th Cir. 2001) … 8

*UAM v. Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471 (E.D. Mich. 2006) … 11

*UAW v. General Motors*, 497 F.3d 615 (6th Cir. 2007) … 7, 8, 9, 12, 14, 15, 16

*UAW v. General Motors*, 2006 U.S. Dist. LEXIS 14890 (E.D. Mich. 2006) . . . 11

*Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) … 11

## **Other**

THE MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004) … 8

5 MOORE'S FED. PRAC., § 23.164 … 8, 13

2 NEWBERG ON CLASS ACTIONS, § 11.24 (3d ed. 1992) … 8

2 NEWBERG ON CLASS ACTIONS, § 11.40 (2d ed. 1985) … 9

4 NEWBERG ON CLASS ACTIONS, § 11.45 (4th ed. 2002) … 12, 17

Wright & Miller, 7B FED. PRAC. & PROC., § 1797.1 … 13

Wright & Miller, 7B FED. PRAC. & PROC., § 1797.5 … 7

## I.        INTRODUCTION

Plaintiff Jill B. Savedoff, on behalf of herself and a certified Class of borrowers of student loans, has entered into a settlement agreement with defendant Access Group, Inc. ("Access").  Under the Settlement Agreement, a copy of which is attached hereto as Exhibit A ("Settlement Agreement"), Access has agreed to pay $82,500.00 to the Class ("Settlement Amount").  *See* Settlement Agreement at ¶ 26.  This payment represents a substantial portion of the liquidated present value of the remaining claim in this litigation, if the Class were to prevail at trial, and is in addition to the benefit of approximately $404,715.72 previously obtained in this case.

Plaintiff now moves the Court to enter a Final Order: (1) finding that the proposed settlement ("Settlement") with Access is fair, reasonable and adequate; (2) finally approving the Settlement; (3) authorizing Access to credit Class members' loan balances or issue checks, as provided by the Settlement Agreement, reflecting the appropriate credit; (4) authorizing reimbursement in the amount of $ 18,094.56 to Class Counsel from the Settlement Fund for costs and expenses incurred in litigating this Action; (5) authorizing an incentive award of $5,000 to Jill B. Savedoff; and (6) denying the lone objection to the Settlement.  Plaintiff submits herewith a proposed Final Approval Order, attached as Exhibit B.   Access concurs with the relief sought in Paragraphs 1-4 and 6 of the Order, and takes no position on Paragraph 5.  The motion and memorandum of law in support are Plaintiff's alone.

## II.       BACKGROUND

### A.        Summary of Plaintiffs' Allegations

On September 9, 2006 (Docket No. 99), Plaintiff filed a Second Amended and Supplemental Class Action Complaint on behalf of the Class.  The Class alleged that Access breached the terms of

certain student loan agreements in two ways: (1) by compounding "Additional Interest"[1] which had accrued during each Class Member's loan repayment period and (2) by applying each Class Member's monthly payments to pay off Additional Interest before applying payments to reduce loan principal.

With regard to the first claim, the Court entered judgment determining that Access's compounding of Additional Interest breached certain Class Members' student loan agreements. The Court enjoined Access from engaging in this practice in the future. This injunction and the related judgment were affirmed by the Sixth Circuit and are no longer subject to further review.

With regard to the second claim, which is still open before this Court, the Class maintains that by applying Class Members' monthly payments to pay off Additional Interest first, Access in effect compounded the Additional Interest by delaying payment of an equal amount of loan principal, thus charging more interest on the delayed principal. Access disagrees.

### B.    Procedural History of Litigation

This action was commenced on January 19, 2006, with the filing of a complaint (Docket No. 1) against Access as well as other defendants who have since been dismissed by agreement. The complaint asserted that the defendants had breached certain Class Members' student loan agreements by compounding Additional Interest. An amended complaint was filed in April 2006 to address some housekeeping issues (e.g., substitution of a defendant) and to add a claim for unjust enrichment (Docket No. 32).

In response to these claims, in July 2006, Access recalculated Class Members' accounts to undo the compounding of Additional Interest. The amount of Additional Interest involved was more than $3.3 million. In unwinding the compounding, however, Access decided to apply borrow-

---

[1] "Additional Interest" means outstanding interest that accrued or accrues during the repayment period of a student loan under an Easy Pay Plan due to interest rate changes or other reasons, but which Access did not or does not bill as currently due when owed.

ers' monthly payments to pay the outstanding Additional Interest before paying any amortization of principal and interest on the loans.  Plaintiff moved both for class certification and to amend the pleadings to reflect this new breach.

Class certification was granted in November 2006, as was Plaintiff's request for leave to file an amended pleading (Docket No. 98).  Plaintiff filed her Second Amended and Supplemental Class Action Complaint ("Second Amended Complaint") against Access on November 9, 2006.

Access moved for summary judgment on the Second Amended Complaint; the Class moved for partial summary judgment.  The Court denied Access' motion and granted the Class' motion for partial summary judgment on February 26, 2007 (Docket No. 106).  The effect was to enter summary judgment on liability in favor of the Class, leaving open the issue of appropriate equitable remedies.  Thereafter, on February 26, 2007 (Docket No. 106), the Court entered a final order enjoining Access from compounding Additional Interest and from applying Class Members' payments to Additional Interest instead of to amortizing principal and ongoing interest on their loans.

In May 2007, Access appealed the final order to the Sixth Circuit (Docket No. 121).  The Sixth Circuit affirmed the grant of partial summary judgment on the Class' first claim (improper compounding of interest), but reversed the District Court on the second claim (misapplication of monthly payments), and remanded for further proceedings to determine whether Access acted in good faith when it collected Additional Interest through the monthly payments first, before amortizing principal and interest on the loans.  This Settlement followed.

### C.    Settlement Negotiations

The parties initially attempted to resolve this litigation in July 2006 with the assistance of an early neutral evaluator.  Counsel made other attempts to settle during the course of the litigation, during which time discovery was exchanged and experts were retained for consultative purposes (and, later, for testimonial purposes).  These efforts proved unsuccessful.

The most recent attempt at negotiating a settlement commenced in August 2008, culminating in an agreement in principal in September 2008, and execution of the Settlement Agreement in December 2008.  During the course of the litigation, and in connection with the settlement negotiations, the parties exchanged significant amounts of information and thoroughly examined the strengths and weaknesses of their respective positions.  The negotiations, conducted by experienced and able counsel, were vigorous in nature and at all times conducted at arm's length.

### D.    Basic Terms of Settlement Agreement

#### 1.    Settlement Fund

The Settlement Agreement provides that Access will pay $82,500.00 (the "Settlement Amount") to settle the remaining claim (misapplication of monthly payments) and this litigation. *See* Ex. A at ¶¶ 15, 26.  The Settlement Amount is in an interest-bearing account where it will remain until distribution.  *Id.* at ¶ 26.  Any interest accrued on the Settlement Amount, less any deductions approved by the Court, shall be distributed to the Class.  *Id.*

 Subject to Court approval, the Settlement Fund shall be distributed by Access to the Class Members having private loans and, for prior to program year 2001-2002, federal loans, either by (a) crediting the principal of an outstanding Easy Pay loan balance that is the subject of this litigation (for Class Members who have existing Easy Pay loan balances) or (b) sending a check in the appropriate amount (to Class Members whose qualifying loan has been paid off).  *Id.* at ¶ 28.  Distribution of the Settlement Fund shall be on a *pro rata* basis, net of any Court-allowed expenses, costs and incentive award.  *Id.*  Access is obligated to complete the distribution of the Settlement Fund and provide Class Counsel with a verification of the distribution within thirty days after the Effective Date. *Id.*

2.     **Release**

The Settlement Agreement provides for a release of Access ("Releasees") by Plaintiff and the

Class, *id.* at ¶ 24, and a release of Plaintiff and the Class ("Releasors") by Access, *id.* at ¶ 25.  Para-

graph 24, the release of the Releasees (including Access) provides:

> Upon the occurrence of the Effective Date and in consideration
> of payment of the Settlement Amount, as specified in Section D
> of this Agreement, and for other valuable consideration, the Re-
> leasees shall be completely released, acquitted, and forever dis-
> charged from any and all claims, demands, actions, suits and
> causes of action, whether class, individual, or otherwise in nature,
> that Releasors, or each of them, ever had, now has, or hereafter
> can, shall, or may have, against Releasees, whether known or un-
> known, on account of or arising out of or resulting from conduct
> alleged or asserted in the complaints filed in the Action.  The Re-
> leasors shall not, after the date of this Agreement, seek to recover
> against any of the Releasees on any of the Released Claims.

Paragraph 25, the release of the Releasors (including Plaintiff and Class Members), provides:

> Upon the occurrence of the Effective Date and in consideration
> of the Release and Discharge described in Paragraph 24 herein,
> and for other valuable consideration, Plaintiff, the Class, Class
> Members, and Class Counsel shall be completely released, ac-
> quitted, and forever discharged from any and all claims, de-
> mands, actions, suits and causes of action, whether class, indi-
> vidual, or otherwise in nature, that Releasees ever had, now has,
> or hereafter can, shall, or may have against Plaintiff, the Class
> and its Members, and/or Class Counsel, whether known or un-
> known, on account of or arising out of or resulting from the
> commencement and/or prosecution of this action.  This release
> language does not affect Plaintiff's and the Class's obligations
> under their loan agreements.

E.     **Preliminary Approval of Settlement**

On December 30, 2008 (Docket No. 144), the Court:  (1) found that the proposed Settle-

ment was sufficiently fair, reasonable and adequate to allow dissemination of notice to the Class; (2)

approved the notice plan and the Notice, and authorized dissemination of Notice; and (3) estab-

lished certain deadlines, including deadlines for objections, opting out, and for final approval.

**F.      Notice Under the Class Action Fairness Act and to the Class**

On December 31, 2008, eight days after filing the Settlement Agreement with the Court, the notice of proposed class settlement required under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), was sent to the appropriate federal and state attorneys general. *See* Exhibit C, McManus Dec. at ¶¶ 1-4. No objections were received. *Id.* at ¶ 5.

Following the Court's preliminary approval, individual notices were sent via First Class Mail to approximately 7,263 Class Members who were identified from current address files. *See* Exhibit D, Pietrafitta Dec. at ¶ 4. A copy of the Notice sent to all Class Members is attached as Exhibit E. In addition, a copy of the Notice was posted at www.wka-law.com in accordance with the Settlement Agreement. This Notice was previously approved by the Court. *See* December 30, 2008 Order (Docket No. 144) at ¶ 2.

**III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED**

**A.      Settlement of Class Actions Is Favored in the Law**

It is well established that there is an overriding public interest in settling litigation, and this is particularly true in class actions. *See, e.g., Clark Equip. Co. v. Int'l Union, Allied Indus. Workers*, 803 F.2d 878, 880 (6th Cir. 1986) (noting strong federal policy favoring settlement agreements); *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement"), *overruled on other grounds, Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Class action settlements minimize the litigation expenses of both parties and reduce the strain such litigation imposes upon already scarce judicial resources. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

This Court's role is to determine whether the settlement as a whole is fair and reasonable and not the product of fraud or overreaching. *Clark Equip. Co.*, 803 F.2d at 880; *see also Berry v. School District of the City of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998) ("The Court's role . . . is

properly limited to the minimum necessary to protect the interests of the class and the public.") (internal citation and quotation omitted).  The Sixth Circuit recently stated:

> [The Court's] task is not to decide whether one side is right or even whether one side has the better of these arguments.  Otherwise, [the Court] would be compelled to defeat the purpose of a settlement in order to approve a settlement.  The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement.

*UAW v. General Motors*, 497 F.3d 615, 632 (6th Cir. 2007) (approving the GM and Ford VEBA class action settlements).

Because the very point of compromise is to avoid determining unsettled issues and the waste and expense of litigation, the Court does not "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands*, 450 U.S. 79, 88 n.14 (1981).  *See also Detroit v. Grinnell Corp.,* 495 F.2d 488, 456 (2d Cir. 1974) (stating that the trial court does not "have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute"); WRIGHT & MILLER, 7B Fed. Prac. & Proc. at § 1797.5 ("the court may not try disputed issues in the case since the whole purpose behind a compromise is to avoid a trial . . . . Rather the judge is restricted to determining whether the terms proposed are fair and reasonable.").

Equally important is the principle that "there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal quotation and citation omitted).[2] "A just result is often no more that an arbitrary point between competing notions of reasonable-

---

[2]  *See also In re Broadwing, Inc.,*  2006 U.S. Dist. LEXIS 72609, *9-10 (S.D. Ohio 2006) (stating that "in any case, there is a range of reasonableness with respect to a settlement") (citation and quotation omitted); *Mich. Hosp. Ass'n v. Babcock,*  1991 U.S. Dist. LEXIS 2058, *4 (W.D. Mich. 1991) ("Reasonableness' should be construed as a zone or range, not a pinpoint.") (citation omitted)

ness." *In re Corrugated Container Antitrust Litig. (II),* 659 F.2d 1322, 1325 (5ᵗʰ Cir. 1981). Thus, "[i]t is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate and reasonable." *Shy v. Navistar International Corp.*, 1993 U.S. Dist. LEXIS 21291, at *11 (S.D. Ohio 1993) (citation omitted) (approving settlement regarding retiree health-care).[3]

Evaluation and approval of the settlement is committed to the sound discretion of the district court. *Clark Equip.*, 803 F.2d at 880. The Court has "wide latitude" in making this determination. "In a fairness hearing, the judge does not resolve the parties' factual disputes, but merely ensures that the disputes are real and that the settlement fairly and reasonably resolves the parties' differences." *UAW v. General Motors*, 497 F.3d at 636-37. Therefore, the Court "may limit the fairness hearing to whatever is necessary to aid it in reaching an informed, just and reasoned decision and need not endow objecting class members with the entire panoply of protections afforded by a full-blown trial on the merits." *Id.* at 635 (internal quotation and citation omitted).[4]

## B. The Settlement Is Fair, Reasonable and Adequate

In deciding whether a class action settlement should be finally approved, the Sixth Circuit

---

[3] *See also* 5 MOORE'S FED. PRAC. at § 23.164[2] (stating that " a proposed settlement may be fair and adequate even though it amounts to only a fraction of the potential recovery in a fully litigated case").

[4] The Court is entitled to consider briefs, declarations, affidavits, and the arguments of counsel. *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 567 (6ᵗʰ Cir. 2001) (stating that "we reject intervenors' suggestion…that the fairness hearing must entail the entire panoply of protections afforded by a full-blown trial on the merits"); *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7ᵗʰ Cir. 1994) (stating that "there is no requirement that an evidentiary hearing be conducted as a precondition to approving a settlement in a class action suit"). "Even when the Court becomes aware of one or more objecting parties, the Court is not required to open to question and debate every provision of the proposed compromise. The growing rule is that the trial courts may limit its proceeding to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co,*, 211 F.R.D. 457, 467 (S.D. Fla. 2002) (internal quotation and citation omitted).

8

has stated that the following factors should be considered:

(1)      The likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement;

(2)      The risks, expense, and delay of further litigation;

(3)      The judgment of experienced counsel who have competently evaluated the strength of their proofs;

(4)      The amount of discovery completed and the character of the evidence uncovered;

(5)      Whether the settlement is fair to the unnamed class members;

(6)      Objections raised by class members;

(7)      Whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and

(8)      Whether the settlement is consistent with the public interest.

*UAW v. General Motors*, 497 F.3d at 631; *Berry*, 184 F.R.D. at 98; *Robinson v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 11673, *13 (S.D. Ohio 2005). Where, as here, the Court already has granted preliminary approval, "the settlement is presumptively reasonable, and an individual who objects has a heavy burden of proving the settlement is unreasonable." *Robinson*, 2005 U.S. Dist. LEXIS 11673 at *10 (citation omitted).

**1.      Likelihood of Success on the Merits and Risks, Expense and Delay of Future Litigation**

"The likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *See In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (citation omitted). Moreover, there is no such thing as risk-free, expense-free litigation. *In re Broadwing, Inc.*, 2006 U.S. Dist. LEXIS 72609 at *9-10 (finding that "[i]n general, most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citation and quotation omitted). Complex litigation of this sort is costly and time-consuming.

Here, there is a substantial risk that the Class will not prevail on the merits, thereby reinforcing the conclusion that the Settlement is fair, reasonable and adequate.

*To summarize*:  The Class and Access had a fundamental difference of opinion whether Access was entitled to use a Class Member's monthly payments to pay down Additional Interest before paying routine amortization of loan principal and interest on the principal.  The Class maintained that Additional Interest was to be paid in a balloon payment at the end of loan term; Access maintained that it was to be paid first.  The Sixth Circuit determined that payment of Additional Interest at the end of the loan term was not reasonable, but that the contract was silent in any event, and the District Court was to determine whether Access acted in good faith in applying Class Members' monthly payments to Additional Interest first, instead of last or in some other fashion.

Assuming, *arguendo*, that Class Members were to lose the argument on good faith before the District Court, then Class Members would be in precisely the same situation in which they are presently.  If Class Members were to prevail on the argument, however, presumably, the District Court would have to determine how Class Members' monthly payments should have been applied to Additional Interest versus loan principal and interest (and other fees and costs).

Before settling this litigation, Class Counsel and their experts analyzed the present value of Class Members' claim as if the Sixth Circuit had ruled in the Class' favor, *i.e.*, as if Additional Interest is properly paid at the end of the loan term, and not before.  This was the Class' best case scenario.  Recognizing that the Sixth Circuit explicitly criticized that outcome as unreasonable, Class Counsel and their experts then compared that number to the present value of Access' best case scenario, *i.e.*, payment of Additional Interest first.  The resulting analysis demonstrated that, while it would be slightly advantageous for the Class to pay the Additional Interest at the end of the loan term, it was reasonable to compromise the claim in light of the risks of litigation, and to settle for the Settlement Amount of $82,500.  This Settlement Amount is in addition to the benefit of $404,715.72 that

Access has conceded inured to the Class when the compounding of Additional Interest was undone as a result of this litigation. The, if the Settlement is finally approved, the Class will be benefited in this case by nearly one-half million dollars.

### 2. Judgment of Counsel

The endorsement of the parties' counsel is entitled to significant weight and supports the fairness of the class settlement. *E.g.*, *UAW v. General Motors*, 2006 U.S. Dist. LEXIS 14890, at *57 (E.D. Mich. 2006)("The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."); *IUE-CWA v. General Motors*, 238 F.R.D. 583, 597 (E.D. Mich. 2006) (same); *UAW v. Ford*, 2006 U.S. Dist. LEXIS 70471, at *72 (E.D. Mich. 2006) ("It is well recognized that the Court should defer to the judgment of experienced counsel who has competently evaluated the strength of the proofs") (quoting *Mich. Hosp. Ass'n*, 1991 U.S. Dist. LEXIS 2058 at *6); *Williams,*, 720 F.2d at 922-23 (citing *Cotton*, 559 F.2d at 1330) (court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *Mich. Hosp. Ass'n*, 1991 U.S. Dist. LEXIS 2058 at *6 ("It is…well recognized that the court should defer to the judgment of experienced counsel who has competently evaluated the strength of the proofs"); *Hughes v. Microsoft Corp.*, 2001 U.S. Dist. LEXIS 5976, at *21 (W.D. Wash. 2001) ("Class counsel's opinion is accorded considerable weight and supports the fairness and adequacy of the proposed settlement"); *Int'l Union of Elec., Salaried, Mach. & Furniture Workers v. Unisys Corp.*, 858 F. Supp. 1243, 1265 (E.D.N.Y. 1994). Accordingly, the settlement is fair, reasonable, and adequate to the Class.[5]

---

[5] "[T]he essence of a settlement is compromise. A just result is often no more than an arbitrary point between competing notions of reasonableness." *In re Corrugated Container Antitrust Litig. (II)*, 659 F.2d at 1325. And since Class Counsel have determined, as a matter of *pro bono publico*, not to seek any attorneys' fees in this case, the Class will receive the vast bulk of this benefit, reduced only by such expense reimbursement and incentive award to Plaintiff as the Court may allow.

Here, counsel for all parties are reputable practitioners and trial counsel experienced in complex class action litigation. *See, e.g.,* Exhibits B and D to Motion for Class Certification (Docket No. 27) (Curriculum Vitae of Class Counsel). All counsel have spent significant time discussing, analyzing and negotiating this case and the terms of the settlement. *Supra.* Their collective judgment in favor of the settlement is entitled to considerable weight. *See Ass'n For Disabled Americans, Inc.*, 211 F.R.D. at 467 (stating that "the Court must rely upon the judgment of experienced counsel and, absent fraud, should be hesitant to substitute its own judgment for that of counsel") (internal quotation and citation omitted).

### 3. The Settlement is Based on Adequate Information, Discovery and Evidence

To evaluate a proposed settlement, the Court does not require "evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation." 4 NEWBERG ON CLASS ACTIONS (4th ed.), § 11:45; *accord UAW v. General Motors*, 497 F.3d at 636-37. Instead, the Court needs "'sufficient facts before him to intelligently approve or disapprove the settlement.'" *Epstein v. Wittig*, 2005 U.S. Dist. LEXIS 31078, *24 (D. Kan. 2005); *accord UAW v. General Motors*, 497 F.3d at 635; *Gen. Tire & Rubber*, 726 F.2d at 1084 n.6.

As set forth above (Section II. C.), this settlement was the culmination of arm's-length negotiations. After litigating this matter for several years, including an appeal to the Sixth Circuit, the parties settled their differences shortly before the final pretrial conference and trial of this matter. Moreover, both Class Counsel and their consulting experts independently reviewed and analyzed the value of the remaining claim. Thus, there is a more than adequate evidentiary record on which the Court can base its evaluation of the Settlement Agreement.

### 4. The Settlement is Fair to Absent Class Members

The Class is cohesive and the Settlement Agreement affects similarly situated class members the same way. (R. 28, Ex. A, Settlement Agreement.). No preference is granted to the Class Repre-

12

sentative under the Settlement.  All class members have a unitary interest in seeking the best possible benefits for borrowers, and there is no risk of an undue burden on absent class members.  *E.g.*, *Heit v. Van Ochten*, 126 F. Supp. 2d 487, 490-91 (W.D. Mich. 2001); 5 MOORE'S FED. PRAC. at § 23.164[6].

### 5.   Only One Class Member Has Objected, and His Objection is Without Merit

"Incentive awards are not uncommon in class action cases and are within the discretion of the court." *Frank*, 228 F.R.D.  at 187.  "A court should not withhold approval of a settlement merely because some class members object." *Mich. Hosp. Ass'n*, 1991 U.S. Dist. LEXIS 2058 at *10; *accord Robinson*, 2005 U.S. Dist. LEXIS 11673 at *16; *Reed v. Rhodes*, 869 F. Supp. 1274, 1281 (N.D. Ohio 1994); *see also* Wright & Miller, 7B FED. PRAC. & PROC. at § 1797.1 (stating that "the fact that there is opposition does not necessitate disapproval of the settlement").  Although the Court must evaluate objections, it also "has an obligation to protect the interests of the silent class majority, despite vociferous opposition by a vocal minority to the settlement." *Mich. Hosp. Ass'n*, 1991 U.S. Dist. LEXIS 2058 at *10.

In all, approximately Class Members were identified and sent notice via First Class Mail.  (Ex. D, Pietrafitta Dec. at ¶ 4.)  Only one individual – less than  0.01% of the entire Class –  has objected at the time this Motion was filed.  This very minimal level of objection represents overwhelming support by the Class for the Settlement Agreement.  *See Robinson*, 2005 U.S. Dist. LEXIS 11673 at *17 (stating that "a relatively small number of class members who object is an indication of a settlement's fairness"); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Berry*, 184 F.R.D. at 106 (stating that "the minimal opposition suggests that the class as a whole is in favor of the agreements"); *Lazy Oil Co.*, v. Witco Corp. 95 F. Supp. 2d 290, 332 (W.D. Pa. 1997) (stating that "'[i]n the class action context, silence may be construed as assent'").  In

this case, the lone objector actually supports the approval of the Settlement, limiting his objection to any award of an incentive payment to the Class Representative.

In determining whether to award incentive fees, courts consider a variety of factors, including "the time and effort expended by that plaintiff in assisting in the prosecution of the litigation . . . ." *Frank*, 228 F.R.D. at 187. Here, Ms. Savedoff, who is an attorney herself, expended considerable time and effort to assist in this litigation. By way of example, over the past three years Ms. Savedoff:

- Reviewed all pleadings in this litigation, including the Complaint, Amended Complaint, and Second Amended Complaint, as well as the many motions that were filed during the course of this litigation, before authorizing counsel to file on her behalf and on behalf of the Class;

- Assisted in responding to discovery, including providing documents and information to Class Counsel so that they could respond to discovery from multiple defendants;

- Spent time preparing for her deposition as well as appearing for it and giving testimony;

- Reviewing the briefing in the appeal to the Sixth Circuit;

- Participated via telephone in multiple conferences ordered by this Court;

- Conferred with Class Counsel regarding settlement negotiations via telephone and terms of the Settlement Agreement to ensure the Class's interests were being protected; and

- Periodically requested a status on the litigation from Class Counsel.

Ms. Savedoff's contributions to this case have been significant and, contrary to the sole objection, merit recognition. *See also infra*, Section IV.B.

### 6. The Settlement Was the Product of Arm's-Length Negotiations

Courts presume the absence of fraud or collusion unless there is evidence to the contrary. *UAW v. General Motors*, 497 F.3d at 628 (stating that "courts customarily demand evidence of improper incentives for the class representatives or class counsel . . . before abandoning the presumption

that the class representatives and counsel handled their responsibilities with the independent vigor that the adversarial process demands"); *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) ("Absent evidence of fraud or collusion, such settlements are not to be trifled with.") (citation omitted).

Here, there was an adversarial relationship between the Class and Access throughout the litigation on the question of Access's right unilaterally to apply a Class member's monthly payment to pay off Additional Interest before paying off principal. The settlement was the result of hard negotiations over many months and, in fact, only was only reached after the appeal to the Sixth Circuit, the exchange and evaluation of extensive information, and the independent review and acceptance of the compromise by all parties.  The process was at arm's length, with each party representing and pursuing its own interests.

Moreover, if the settlement agreement itself is fair, reasonable and adequate, the Court may assume that the negotiations were proper and free of collusion.  *E.g., Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 152 (S.D. Ohio 1992) ("In essence, under this test, if the terms of the proposed settlement are fair, then the court may assume the negotiations were proper."). This presumption is conclusive here because there is no evidence of collusion (nor could there be).  Independently, Class Counsel assure the Court that there was no collusion, but rather the Settlement is the result of good faith, adversarial negotiations.

Finally, the claims of the Class Representative are treated no differently under the Settlement Agreement from the claims of any other Class Member.  *See generally* Exhibit A (Settlement Agreement).

### 7.     Settlement is in the Public Interest

The Settlement serves the public interest by conserving the resources of the parties and the Court and promoting the "federal policy favoring settlement of class actions."  *UAW v. General Mo-*

*to*rs, 497 F.3d at 632.  *See also In re Cardizem*, 218 F.R.D. at 530 (recognizing the "strong public interest in encouraging settlement of complex litigation and class action suits").

**IV.    REIMBURSEMENT OF CLASS COUNSELS' COSTS AND EXPENSES AND PAYMENT OF A MODEST INCENTIVE AWARD TO THE CLASS REPRESENTATIVE ARE APPROPRIATE**

**A.    Reimbursement of Costs and Expenses**

Class Counsel have litigated this case for over three years and have conferred a total benefit upon the Class of $487,215.72.[6]  Although Class Counsel have expended approximately 1577 hours and $615,209 worth of time in prosecuting this case against Access, *see* Exhibit F, Weinstein Decl. at ¶¶ 3,6, and Exhibit G, Madden Decl. at ¶¶ 3, 5, Class Counsel are not seeking recompense for their time efforts.  However, and as provided for in the Notice, Class Counsel do seek reimbursement from the common fund for the costs and expenses that they have incurred in connection with litigating this matter in the amount of $18,094.56.

Under the common fund doctrine, class counsel are "entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses."  *In re Cardizem*, 218 F.R.D. at 535.  *See also, In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund.").  *In re SmithKline Beecham Corp. Sec. Lit.*, 751 F.Supp. 525, 531 (E.D. Pa. 1990) (same).  In determining whether the requested expenses are compensable from the common fund, the Court considers whether the particular costs are the type rou-

---

[6] After Plaintiff brought this litigation, Access responded in party by recalculating Class Members' accounts to undo the compounding of Additional Interest, conferring a benefit of $404,715.72 upon the Class.  The present Settlement Agreement adds an additional $82,500.00 to this amount.

tinely billed by attorneys to paying clients in similar cases. *In re Synthroid Marketing Litig.*, 264 F.3d 712, 722 (7th Cir. 2001).

Class Counsel have advanced more than $18,000.00 in unreimbursed litigation costs to date in prosecuting this case. *See* Ex. F, Weinstein Decl., and Ex. G, Madden Decl. This includes, *inter alia*, the cost of:

- Depositions, including retention of court reporters and transcripts from the depositions;

- Travel to and attendance at hearings and depositions;

- Copies of documents from Access (and other since-dismissed defendants);

- Filing fees and costs associated with Access' appeal to the Sixth Circuit; and

- Expert consultation.

These costs and expenses, which have benefited all Class members in this litigation, are of "the type routinely billed by attorneys to paying clients in similar cases." *In re Synthroid Marketing Litig.*, 264 F.3d at 722.

Accordingly, Class Counsel request that they be reimbursed in the amount of $18,094.56, representing 3.7% of the common fund. The request is fair and reasonable, and should be approved.

### B.  Incentive Award

Class Counsel also request that the Court approve an incentive award of $5,000 to Jill B. Savedoff, the Class Representative. The Notice informed the Class of the request for an incentive award and allowed for them to object to the award.

A number of courts have approved of these awards on the basis that class representatives take on risks and perform services for the benefit of the Class. 4 NEWBERG ON CLASS ACTIONS, §11:38 (4th ed.). Indeed, "[a]t the conclusion of a successful class action case, it is common for

courts, exercising their discretion, to award special compensation to the class representatives in rec-

ognition of the time and effort they have invested for the benefit of the class." *Smith v. Krispy Kreme*

*Doughnuts Corp.*, 2007 U.S. Dist. LEXIS 2392, at *11-*12 (M.D.N.C. 2007) (citations omitted).  Plain-

tiff in this case put forth significant effort on behalf of the Class.  *Supra*, Section III.B.5.  Plaintiff

"fully complied with all demands placed on [her] during this litigation and assisted Class Counsel's

investigation of this case by providing documents and information to aid counsel, and undergoing

cross examination during depositions." *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 124 (D. D.C. 2007).

In addition, she actively monitored the progress of the case and periodically consulted with Class

Counsel concerning pertinent matters.   Therefore, the requested payment to Plaintiff is reasonable

in light of her investments of time and effort for the benefit of the Class.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff and the Class respectfully request that this Court enter

the proposed Order for Final Approval, attached hereto as Exhibit B:

> (1) finding that the proposed Settlement is fair, reasonable and ade-
> quate;
>
> (2) finally approving the Settlement;
>
> (3) authorizing Access to credit Class members' loan balances or is-
> sue checks, as provided by the Settlement Agreement, reflecting the
> appropriate credit;
>
> (4) authorizing reimbursement in the amount of $ 18,094.56 to Class
> Counsel from the Settlement Fund for costs and expenses incurred in
> litigating this Action;
>
> (5) authorizing an incentive award of $5000.00 to Jill B. Savedoff; and
>
> (6) denying the lone objection to the Settlement.

Access concurs in the relief sought in the proposed Order.

Respectfully submitted,

Dated:  February 13, 2009

/s/ David H. Weinstein
DAVID H. WEINSTEIN
MINDEE J. REUBEN
WEINSTEIN KITCHENOFF & ASHER LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
weinstein@wka-law.com
reuben@wka-law.com
Tel: (215) 545-7200
Fax: (215) 545-6535

JUSTIN MADDEN
LANDSKRONER GRIECO MADDEN, LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
justin@landskronerlaw.com
Tel: (216) 522-9000
Fax: (216) 522-9007

Attorneys for Plaintiff,
Jill B. Savedoff and the Class

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2009, a copy of the foregoing Motion for Final Approval of Class action Settlement, for Payment of Costs and Expenses, and for an Incentive Award to Class Representative was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties on the electronic filing receipt.  Parties may access this filing through the Court's ECF system.

Date:  February 13, 2009                    BY:  MINDEE J. REUBEN